# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 4, 2012

## STATE OF TENNESSEE v. JACKIE EWING

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-321     Donald H. Allen, Judge**

_____

**No. W2012-00376-CCA-R3-CD  - Filed December 11, 2012**

_____

A Madison County jury convicted the Defendant, Jackie Ewing, of theft of property valued over $1,000.00.  The trial court sentenced the Defendant to twelve years in the Tennessee Department of Correction.  On appeal, the Defendant asserts that the evidence is insufficient to support his conviction.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Gregory D. Gookin (on appeal) and Sheila Stevenson (at trial), Jackson, Tennessee, for the appellant, Jackie Ewing.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. Woodall, District Attorney General; Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This cases arises from a theft of merchandise in a Sears store in Jackson, Tennessee.  A Madison County grand jury indicted the Defendant for theft of property valued over $1,000.00.  At the trial on these charges, the parties presented the following evidence: David Presson, a Sears Loss Prevention Manager, testified that he worked at the Sears store located in the Old Hickory Mall in Jackson, Tennessee.

Presson testified that, at around 9:30 p.m. on December 21, 2010, while he was on his way home, store management notified him that a "push-out theft" was in progress. Presson explained that a "push-out theft" is a theft where an individual places merchandise in a shopping cart and pushes the cart out of the store without paying for the items. Presson said that the two suspects were not confronted that night, but, after returning to the store that night, Presson took statements from various employees. The following day, December 22, 2010, Presson viewed surveillance video recordings. Sears maintained fifty-two surveillance video cameras throughout the store, which captured views from various angles and in various areas of the store. Presson was able to confirm that a "push-out theft" had occurred and contacted the Jackson Police Department. Presson isolated the relevant video segments which captured the two suspects entering the store, their progress throughout the store, and their exit from the store. Presson made copies of this video footage and provided it to police.

Presson testified that, by working with a store employee well-versed in the store stock and comparing the items placed in the shopping cart on the video footage with the remaining items in that area of the store, he was able to compile a list of the stolen items and the value of those items. Presson said that a store employee identified the female suspect, but he also said that he was not personally familiar with either suspect.

Charles Chatman, a Sears employee, testified that he worked in the tools department of the Sears store. On the night of December 21, 2010, Chatman said he observed a man and a woman in the tools department. He recognized the woman from Jackson State Community College where he attended school. He said that she was a tutor for a math lab class. He then identified the Defendant in court as the man he saw on the night of December 21, 2010. Chatman watched the couple push their cart full of items to the adjacent fitness department. When he did not see the couple return to the register to pay for the items, he went to the fitness department and yelled out, "Did they pay for that?" The couple, however, had left at the "perfect time" because the other sales associate who was in the fitness department had his back to the exit. Chatman reported the incident to his manager.

Tiffany Baker, a Sears loss prevention associate, testified that, before working in loss prevention at Sears, she worked in merchandising and customer assistance. Baker said that, on December 22, 2010, she watched surveillance video footage from the previous night and compared items on the floor of the store with what she watched the shoplifters place in the shopping cart on the video recording. She then compiled a list of thirty-two items, all from the children's, men's, and tool departments, and the value of each item. The total amount of the items stolen was $2,416.19.

Baker testified that the department store did not recover any of the stolen items. Baker then named each item and the individual value of that item for the jury. The State

played the video surveillance footage of the Defendant's progression through the department store on the night of December 21, 2010. The video showed the Defendant selecting various items from a rack or shelf while the co-defendant stayed with the shopping cart. It also showed the Defendant and co-defendant exiting the store with the unbagged items in the cart.

On cross-examination, Baker testified that all merchandise sold in the store is placed into a bag. If the item is too large, the bag is either stapled or tied to the product to indicate the item has been purchased. Baker said that the items inside the Defendant's shopping cart as he exited the store were not in store bags. Baker explained that the video surveillance camera did not record the Defendant taking items in the tool department but that, due to the location of one of the surveillance cameras, personnel zoomed in on a frame of the Defendant's shopping cart and Baker was able to see the nailer kit taken from the tool department.

Chekari Williamson, the co-defendant, testified that her charges related to these crimes were pending. Williamson recalled that she and the Defendant arrived at Sears at night on December 21, 2010. Williamson said that the Defendant offered to pay her $20.00 if she would drive the Defendant to Sears to buy gifts for his grandchildren. Williamson said that she parked at the side entrance of Sears, and they both went inside the store. Williamson helped the Defendant pick clothes, and she placed them in a shopping cart. She estimated that they were inside Sears for approximately twenty to thirty minutes.

Williamson testified that she told the Defendant she would pull her car around to the door. She was on her cellular phone as she exited the store and, when she ended her call, she realized that the Defendant was directly behind her and that he had not stopped to pay for his items. She said that she used "a few choice words," and then told the Defendant that he was not getting in her car with "this stuff." The Defendant told Williamson to "stop tripping" and said, "come on, let's go." Williamson said that she drove away leaving the Defendant in the parking lot with the items. Williamson said that none of the items in the shopping cart were in bags.

Williamson identified herself and the Defendant in the video surveillance footage. Williamson said that she did not realize the items were being taken without payment until she and the Defendant were in the parking lot.

On cross-examination, Williamson testified that she is employed at Jackson State Community College.

Based upon this evidence, the jury convicted the Defendant of theft of property valued over $1,000.00. The trial court sentenced the Defendant as a career offender to serve twelve

3

years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues that the evidence presented at trial is insufficient to support his conviction. The State responds that the proof supports the jury's finding of the Defendant's guilt beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999)( (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A person commits theft of property if that person: (1) "knowingly obtains or exercises control over the property," (2) "with intent to deprive the owner" of the property, and (3) "without the owner's effective consent." T.C.A. § 39-14-103 (2010). In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. Theft of property valued at more than $1,000.00 but less than $10,000 is a Class D felony. T.C.A. § 39-14-105(3) (2010). Theft may also be inferred by the mere possession of recently stolen goods. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987).

The evidence, viewed in the light most favorable to the State, proves that the Defendant was observed by Sears employees and recorded on surveillance video placing $2,416.19 worth of merchandise in a shopping cart, pushing the shopping cart outside of the store, and leaving the premises without paying for the items. This evidence is sufficient to prove that the Defendant knowingly took over $1,000.00 worth of merchandise without Sears' permission and with the intent to deprive Sears of the property.

We find the Defendant's argument that the State failed to prove intent to commit these acts unpersuasive. The Defendant entered the store, selected items, and placed them in the cart. He pushed the cart outside of the store and left without paying for the items. This is sufficient evidence upon which the jury could find the Defendant acted intentionally when he pushed a shopping cart full of items that he had not paid for outside the store.

The evidence is sufficient to support the Defendant's conviction, and he is not entitled

to relief on this issue.

### III. Conclusion

After a thorough review of the record before this Court, we hold that the evidence is sufficient to sustain the Defendant's conviction. The judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE